IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS


ROBERT E. WILSON                    )
                                    )
                Plaintiff,          )
                                    )   CIVIL ACTION
v.                                  )
                                    )   No. 07-4142-JAR-JTR
                                    )
MICHAEL J. ASTRUE,                  )
Commissioner of Social Security,    )
                                    )
                Defendant.          )
_____)


REPORT AND RECOMMENDATION

     Plaintiff seeks review of a decision of the Commissioner of

Social Security (hereinafter Commissioner) denying disability

insurance benefits (DIB) and supplemental security income (SSI)

under sections 216(i), 223, 1602 and 1614(a)(3)(A) of the Social

Security Act.  42 U.S.C. §§ 416(i), 423, 1381a, and

1382c(a)(3)(A)(hereinafter the Act).  Finding error, the court

recommends the case be REMANDED for further proceedings.

I.   Background

     Plaintiff first applied for DIB and SSI on Aug. 24, 2000.

(R. 62-64, 427-29).  That set of applications was denied

initially on Sept. 14, 2000, and plaintiff did not appeal the

decision.  (R. 27, 30-33).  Plaintiff protectively filed a second

set of applications on Dec. 1, 2000.  (R. 65-68, 430-33).  After

administrative proceedings thereon, plaintiff filed a complaint
with the district court on Mar. 3, 2004, seeking judicial review
of the Commissioner's decision dated Aug. 11, 2003. (first
decision).  <u>Wilson v. Barnhart</u>, No. 04-4020, Complaint (D. Kan.
Mar. 3, 2004).  Briefing was completed, and on Dec. 20, 2004 the
district court issued its Memorandum and Order reversing the
first decision and remanding the case to the Commissioner for
further proceedings.  <u>Id.</u>, Memorandum and Order (D. Kan. Dec. 20,
2004); (R. 552-68).[1]  In its decision, the court determined the
Commissioner erred in considering whether plaintiff's condition
meets or equals a Listing, in weighing the medical opinions, and
in weighing the credibility of plaintiff's allegations, and noted
that the Commissioner's mental residual functional capacity (RFC)
assessment needed further explanation on remand.  (R. 557-66).
The Appeals Council vacated the first decision, and remanded for
further proceedings consistent with the court's order.  (R. 581).

    After the first decision was made, but while review was
pending, plaintiff filed two more sets of applications.  The
third set of applications was filed Oct. 3, 2003 (R. 615-18,
1223-26), and denied initially on Jan. 6, 2004.  (R. 540); (Pl.
Br. p.2 n.1).  Plaintiff did not appeal the decision on the third

---

[1]The court's Memorandum and Order, and its Judgment in Case
No. 04-4020 are contained in the administrative record in this
case and further citation will be to the administrative record.
(R. 552-68).

set of applications.  (Pl. Br. p.2 n.1)  The fourth set of
applications was filed Oct. 28, 2004.  (R. 619-24, 1227-33).  The
fourth set of applications was denied initially on June 28, 2005,
and on Aug. 15, 2005 plaintiff filed a "Request for Hearing by
Administrative Law Judge" asking that the appeal of the fourth
set of applications be associated with the then-pending hearing
on remand.[2]  (R. 541-42, 600, 1234-35).

The Administrative Law Judge (ALJ) who issued the first
decision held two supplemental hearings after remand, on July 13,
2006, and Feb. 16, 2007.  (R. 1323-86, 1242-79).  A final
supplemental hearing was held before a second ALJ on Sept. 17,
2007.  (R. 1280-1322).  Plaintiff was informed that the first ALJ
had recused herself and had transferred the case to a second ALJ
(Pl. Br. 3), but the court found no record evidence explaining
why the case had been transferred.  And in fact, at the end of
the Feb. 2007 hearing, the first ALJ stated, "I will take all
this under advisement.  I'll send you a written Decision in the
mail."  (R. 1278).  Nonetheless, a second ALJ held another
supplemental hearing on Sept. 17, 2007 before issuing a second
decision on Oct. 16, 2007.  (R. 519-27).  The second decision is
the decision at issue here.

In the second decision, the ALJ found that plaintiff was
insured for Title II only through Dec. 31, 2004, and has not

_____

[2]The ALJ did not address plaintiff's request.  (R. 519-27).

engaged in substantial gainful activity since Feb. 1999.  (R. 521).  She found that plaintiff has "severe" impairments of diabetes, fractures of the left tibia and fibula, degenerative joint disease, status post epicondylectomy of the right elbow, pulmonary disease, and mental and emotional impairments including depression, but that his impairments or combination of impairments does not meet or medically equal the severity of an impairment in the Listing of Impairments.  (R. 521-22).

The ALJ next made her RFC assessment.  She considered plaintiff's allegations, the medical evidence, and the opinions of the medical sources.  (R. 522-25).  She found that plaintiff's allegations of limiting symptoms "are not entirely credible" (R. 524), and stated that she "cannot give great weight" to the "attorney-generated reports from claimant's treating psychologists, Dr. Shawna Wright, PhD., and Dr. Melvin Berg PhD." (R. 525).  She concluded that plaintiff has an RFC to perform a range of light work, with the ability to understand, remember, and complete simple, intermediate, and complex instructions, but is limited by the ability only occasionally to bend, stoop, kneel, crouch, crawl, and climb stairs.  (R. 522-23).

Based upon this RFC assessment, the ALJ found plaintiff is unable to perform his past relevant work, but there exist jobs in the economy in significant numbers of which plaintiff is capable, such as "light cleaner," and "bench assembler."  (R. 525-26).

-4-

Consequently, the ALJ found that plaintiff is not disabled within the meaning of the Act, and denied his applications.  (R. 526-27).  The Appeals Council did not assume jurisdiction over the decision on remand and the second ALJ's decision became the final decision of the Commissioner after remand.  (R. 517); Hamlin v. Barnhart, 365 F.3d 1208, 1214 (10th Cir. 2004); 20 C.F.R. §§ 404.984, 416.1484.  Plaintiff now seeks judicial review.

## II.  Legal Standard

The court's review is guided by the Act.  42 U.S.C. §§ 405(g), 1383(c)(3).  Section 405(g) provides, "The findings of the Commissioner as to any fact, if supported by substantial evidence, shall be conclusive."  The court must determine whether the factual findings are supported by substantial evidence in the record and whether the ALJ applied the correct legal standard. Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007); White v. Barnhart, 287 F.3d 903, 905 (10th Cir. 2001).  Substantial evidence is more than a scintilla, but less than a preponderance, and it is such evidence as a reasonable mind might accept to support a conclusion.  Zoltanski v. F.A.A., 372 F.3d 1195, 1200 (10th Cir. 2004); Gossett v. Bowen, 862 F.2d 802, 804 (10th Cir. 1988).  The court may "neither reweigh the evidence nor substitute [it's] judgment for that of the agency."  White, 287 F.3d at 905 (quoting Casias v. Sec'y of Health & Human Serv., 933 F.2d 799, 800 (10th Cir. 1991)); Hackett v. Barnhart, 395 F.3d

-5-

1168, 1172 (10th Cir. 2005).  The determination of whether substantial evidence supports the Commissioner's decision, however, is not simply a quantitative exercise, for evidence is not substantial if it is overwhelmed by other evidence or if it constitutes mere conclusion.  Gossett, 862 F.2d at 804-05; Ray v. Bowen, 865 F.2d 222, 224 (10th Cir. 1989).

An individual is under a disability only if that individual can establish that he has a physical or mental impairment which prevents him from engaging in substantial gainful activity and is expected to result in death or to last for a continuous period of at least twelve months.  42 U.S.C. § 423(d).  The claimant's impairments must be of such severity that he is not only unable to perform his past relevant work, but cannot, considering his age, education, and work experience, engage in any other substantial gainful work existing in the national economy.  Id.

The Commissioner has established a five-step sequential process to evaluate whether a claimant is disabled.  20 C.F.R. §§ 404.1520, 416.920 (2007); Allen v. Barnhart, 357 F.3d 1140, 1142 (10th Cir. 2004); Ray, 865 F.2d at 224.  "If a determination can be made at any of the steps that a claimant is or is not disabled, evaluation under a subsequent step is not necessary." Williams v. Bowen, 844 F.2d 748, 750 (10th Cir. 1988).

In the first three steps, the Commissioner determines whether claimant has engaged in substantial gainful activity,

-6-

whether he has severe impairments, and whether the severity of his impairments meets or equals the severity of any impairment in the Listing of Impairments (20 C.F.R., Pt. 404, Subpt. P, App. 1).  Id. at 750-51.  If claimant's impairments do not meet or equal the severity of a listing, the Commissioner assesses his RFC.  20 C.F.R. §§ 404.1520, 416.920.  This assessment is used at both step four and step five of the process.  Id.

After assessing claimant's RFC, the Commissioner evaluates steps four and five--whether the claimant can perform his past relevant work, and whether he is able to perform other work in the national economy.  Williams, 844 F.2d at 751.  In steps one through four the burden is on claimant to prove a disability that prevents performance of past relevant work.  Dikeman v. Halter, 245 F.3d 1182, 1184 (10th Cir. 2001); Williams, 844 F.2d at 751 n.2.  At step five, the burden shifts to the Commissioner to show other jobs in the national economy within claimant's capacity. Id.; Haddock v. Apfel, 196 F.3d 1084, 1088 (10th Cir. 1999).

Plaintiff claims the ALJ erred in evaluating his back impairment at steps two and three, failed to properly evaluate the medical source opinions, selectively abstracted evidence supporting her credibility finding while ignoring evidence contrary to the finding, and failed to link the evidence to her RFC assessment.  He argues that due to the delays in deciding the issue of disability, and the fact that errors in the first

decision were repeated in the second decision, remand for an immediate award of benefits is the only equitable relief proper in this case.  (Pl. Br. 48-49).  The Commissioner argues that the ALJ properly evaluated plaintiff's back impairments, and considered the medical source opinions.  He argues that the credibility determination was properly supported with substantial evidence in the record, as was the RFC assessment.  The Commissioner asserts that even if reversal is necessary, remand for further administrative proceedings is the appropriate remedy. The court agrees with plaintiff that the ALJ committed errors requiring reversal, but finds that remand for further proceedings is necessary in this case.  The court addresses each issue in the order reached by applying the sequential evaluation process.

**III. Evaluation of Back Impairment at Steps Two and Three**

Plaintiff asserts that the evidence shows that he has a medically determinable impairment of his back, that his back impairment is "severe" within the meaning of the Act, and that the ALJ did not consider whether the severity of his back impairment in combination with his other impairments meets or medically equals the severity of Listing 1.04, Disorders of the Spine.  (Pl. Br. 29-33).  Plaintiff points to evidence tending to show that he has a medically determinable "severe" back impairment, and that his condition medically equals the criteria of Listing 1.04A.  Id. at 30-33.  The Commissioner argues that

plaintiff has not met his burden to show that his back impairment is "severe," and points to evidence tending to show that the impairment does not significantly limit plaintiff's ability to perform basic work activities. (Comm'r Br. 4-5). He also argues that plaintiff has not met his burden to show his condition meets or equals the criteria of Listing 1.04, and points to evidence tending to show that plaintiff does not meet those criteria. Id. at 6-7.

The decision at issue contains one sentence relevant to the step two analysis, in which the ALJ listed plaintiff's impairments which she found to be "severe." (R. 521). There is no mention of any back impairment. The step three analysis is similarly abbreviated. In it, the ALJ stated her finding that plaintiff's impairments or combination of impairments do not meet or equal a listed impairment. (R. 512). She then gave a one-page explanation of that finding. (R. 522). In that explanation, all but one paragraph consists of an explanation why plaintiff's condition does not meet or medically equal the severity of Listing 12.04, Affective Disorders. Id. The other paragraph is a general statement why plaintiff's medical condition does not meet or medically equal:

> any of the criteria set forth for any impairment, as
> there is no evidence of ineffective ambulation, loss of
> use of the upper extremities, gross anatomical
> deformity, loss of major joint motion, end organ damage
> or other complications from diabetes, loss of pulmonary
> function, deoxygenation [sic], marked deficits in

-9-

activities of daily living, social functioning,
concentration or persistence, extended episodes of
decompensation, an inability to function outside a
highly supportive setting, or other signs, symptoms or
findings of the frequency or severity required of the
listings.  In addition, claimant's attorney has not
presented persuasive evidence or arguments that
claimant's impairments are of listing-level severity.

(R. 522).  The ALJ did not mention Listing 1.04.

The parties' arguments and the decision's findings relating
to steps two and three of the evaluation process illustrate an
overarching error in the decision here.  The administrative
record consists of 1,386 pages of evidence and testimony, of
which 751 pages are medical evidence from Mar. 1999 through Sept.
2007, and 196 pages are transcripts of four hearings held by two
ALJ's over four and one-half years.  All of this evidence was
considered, summarized, and explained in a decision consisting of
eight pages with a one-paragraph conclusion on the ninth page.
(R. 519-27).  As summarized above, in condensing the step two and
step three findings, the ALJ stated the findings, gave no
explanation of the step two findings, explained at step three why
plaintiff's condition does not meet or equal the severity of
Listing 12.04, and stated in one paragraph certain criteria which
allegedly preclude a finding that any other listing is met or
equaled.  In the step two and step three analysis there is no
mention of any evidentiary fact relied upon or citation to any
page of the record relied upon in reaching the conclusion.

-10-

This is error.  An administrative agency must state reasons for its decisions.  <u>Kepler v. Chater</u>, 68 F.3d 387, 391 (10th Cir. 1995). (citing <u>Reyes v. Bowen</u>, 845 F.2d 242, 244 (10th Cir. 1988)).  The decision must be supported by substantial evidence in the record viewed as a whole.  <u>Frantz v. Astrue</u>, 509 F.3d 1299, 1300 (10th Cir. 2007).  Here, "All of the analysis was made in the ALJ's mind, making her decision unreviewable by the court."  <u>Frost, ex rel. Frost v. Astrue</u>, No. 07-4056-JAR, 2008 WL 1924126 at *11 (D. Kan. Apr. 29, 2008).

It is not surprising, therefore, that both plaintiff and the Commissioner attempt to support their step two and step three arguments by citing to evidence which was not cited or even mentioned by the ALJ.  The court may not weigh the evidence in the first instance.  <u>Hackett</u>, 395 F.3d at 1172; <u>White</u>, 287 F.3d at 905; <u>Casias</u>, 933 F.2d at 800.  But the decision here does not reveal how the ALJ weighed the evidence regarding whether plaintiff has a "severe" back impairment or whether that impairment meets or medically equals the severity of Listing 1.04.  Moreover, the court is unable even to determine whether the ALJ properly eliminated Listing 1.04, because none of the criteria to which the ALJ specifically referred ("ineffective ambulation, loss of use of upper extremities, gross anatomical deformity, loss of major joint motion," etc.) relate to any of the criteria of Listing 1.04.

Because the court may not provide a <u>post-hoc</u> rationalization
to justify the ALJ's decision, <u>Grogan v. Barnhart</u>, 399 F.3d 1257,
1263 (10th Cir. 2005); <u>Allen v. Barnhart</u>, 357 F.3d 1140, 1145
(10th Cir. 2004), it may not evaluate the evidence cited in the
parties' briefs and decide <u>de novo</u> whether plaintiff has a
"severe" back impairment and whether that impairment meets or
medically equals Listing 1.04.

Further, as plaintiff argues, plaintiff presented written
argument to the Social Security Administration that plaintiff's
condition medically equals Listing 1.04A. (R. 631). Someone
(perhaps the first ALJ?) made handwritten notations thereon
regarding record evidence that potentially supports the argument.
<u>Id.</u> At the hearing on Jul. 13, 2006, the ALJ and plaintiff's
attorney conducted an extensive discussion regarding plaintiff's
contention that he medically equals Listing 1.04A. (R. 1328-39).
Yet, despite this, the second ALJ made no mention of the Listing
or of the evidence discussed, and stated that "claimant's
attorney has not presented persuasive evidence or arguments that
claimant's impairments are of listing-level severity." (R. 522).
If by this statement the ALJ meant plaintiff's attorney made no
argument, she erred in failing to consider the argument and
evidence which was presented. If she meant plaintiff's arguments
and evidence are not persuasive, she erred in failing to explain
why the arguments and evidence are not persuasive. Therefore,

-12-

remand is necessary for the Commissioner to consider plaintiff's argument that he has a "severe" medically determinable back impairment which, in combination with his other impairments, medically equals Listing 1.04.

## IV.  Consideration of Medical Source Opinions

Plaintiff claims error in evaluating the opinions of medical sources because the ALJ did not mention the progress notes or opinions of plaintiff's primary care nurse-practitioner, Dr.[3] Hayes; did not address the opinions of Dr. Curtis as directed in the court's remand order; and failed to properly evaluate the medical opinions of Dr. Wright, Dr. Berg, and Dr. Schrag,[4] the only doctors whose reports were mentioned in the decision.  The Commissioner argues that Dr. Hayes is not an acceptable medical source and it was proper for the ALJ to rely instead on the opinions of acceptable medical sources; that although the ALJ did not discuss Dr. Curtis's opinion, it was proper for the ALJ to rely instead on a plurality of medical source opinions and to

---

[3]The court is aware that Dr. Hayes is a nurse-practitioner, not a physician, but because the record reveals Dr. Hayes is a Ph.D., in deference the court addresses her as Dr. Hayes, as it does Dr. Wright, Dr. Berg, and Dr. Schrag, each of whom is a Ph.D. psychologist, not a medical doctor.

[4]The decision cites certain medical treatment and opinion evidence attributed to Dr. Bharati (R. 524)(citing Ex. 16F), but as plaintiff's brief explains, although appearing on the letterhead of "Ralph Bharati, M.D., P.A.," the exhibit cited is signed in every case by Dr. Schrag, Ph.D.  (Pl. Br. 36, n.4)(citing R. 263-69).  Future reference will be to Dr. Schrag.

effectively assign controlling weight to Dr. Carabetta's medical opinion in assessing plaintiff's RFC; and that the ALJ properly discounted the opinions of Drs. Wright and Berg based upon substantial evidence in the record.

**A.    Standard for Evaluating Medical Source Opinions**

"Medical opinions" are defined as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [claimant's] impairment(s), including [claimant's] symptoms, diagnosis and prognosis, what [claimant] can still do despite impairment(s), and [claimant's] physical or mental restrictions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2).  The regulations include licensed physicians, licensed or certified psychologists, licensed optometrists, licensed podiatrists, and qualified speech-language pathologists within the meaning of "acceptable medical sources."  Id., §§ 404.1513(a)(2), 416.913(a)(2).  The regulations provide that the Commissioner may use evidence from "other medical sources" such as nurse-practitioners, physician's assistants, naturopaths, chiropractors, audiologists, and therapists, not on the list of "acceptable medical sources" to show the severity of plaintiff's impairments and how they affect his ability to work.  20 C.F.R. §§ 404.1513(d), 416.913(d).

Opinions from any medical source, even those regarding ultimate issues reserved for the Commissioner, must not be

ignored, and unless a treating physician's opinion is given controlling weight, will be evaluated by the Commissioner in accordance with factors contained in the regulations.  20 C.F.R. §§ 404.1527(d), 416.927(d); Social Security Ruling (SSR) 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24 (Supp. 2008).  A treating physician's opinion about the nature and severity of plaintiff's impairments should be given controlling weight by the Commissioner if well supported by clinical and laboratory diagnostic techniques and if not inconsistent with other substantial evidence in the record.  Watkins v. Barnhart, 350 F.3d 1297, 1300-01 (10th Cir. 2003); 20 C.F.R. §§ 404.1527(d)(2), 416.927(d)(2).  When a treating physician opinion is not given controlling weight, the ALJ must nonetheless specify what lesser weight he assigned the treating physician's opinion.  Robinson v. Barnhart, 366 F.3d 1078, 1083 (10th Cir. 2004).

When the Commissioner does not give controlling weight to a treating physician's opinion on the nature and severity of the claimant's impairment(s), the Commissioner will weigh all medical opinions in accordance with the regulatory factors.  20 C.F.R. §§ 404.1527(d)(2)(i, ii) & (d)(3-6), 416.927(d)(2)(i, ii) & (d)(3-6).  Those factors are: (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed;

-15-

(3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.  Id. at §§ 404.1527(d)(2-6), 416.927(d)(2-6); see also Goatcher v. Dep't of Health & Human Serv., 52 F.3d 288, 290 (10th Cir. 1995).

Recognizing the reality that an increasing number of claimants have their medical care provided by health care providers who are not "acceptable medical sources"--nurse practitioners, physician's assistants, social workers, and therapists--the Commissioner promulgated SSR 06-3p.  West's Soc. Sec. Reporting Serv., Rulings 327-34 (Supp. 2008).  In that ruling, the Commissioner noted:

> With the growth of managed health care in recent years and the emphasis on containing medical costs, medical sources who are not "acceptable medical sources," such as nurse practitioners, physician assistants, and licensed clinical social workers, have increasingly assumed a greater percentage of the treatment and evaluation functions previously handled primarily by physicians and psychologists.  Opinions from these medical sources, who are not technically deemed "acceptable medical sources" under our rules, are important and should be evaluated on key issues such as impairment severity and functional effects, along with the other relevant evidence in the file.

Id., Rulings, 330-31.

SSR 06-3p explains that where a treating source opinion is not given controlling weight, opinions of nurse-practitioners will be evaluated using the regulatory factors for evaluating medical opinions cited above.  Id. at 331-32(citing 20 C.F.R. §§ 404.1527, 416.927).  The ruling explains that the ALJ "generally should explain the weight given to opinions from these 'other sources,' or otherwise ensure that the discussion of the evidence in the . . . decision allows a claimant or subsequent reviewer to follow the adjudicator's reasoning, when such opinions may have an effect on the outcome of the case." Id. at 333; see also, Frantz, 509 F.3d at 1302 (remanding for consideration of a nurse-practitioner's opinions in light of SSR 06-3p).

**B.**   **Analysis**

In the decision at issue, the ALJ noted Dr. Schrag's opinion that plaintiff displayed extreme symptom magnification.  (R. 524).  She discussed the other medical evidence generally:

> Moreover, the underlying medical signs and findings do not support a conclusion that claimant is significantly disabled.  Specifically, physical exams have observed intact strength and sensation other than a slight loss of sensation in the right elbow, normal or cautiously antalgic gait and station, no crepitus or clicking of either knee, intact grip strength in the left hand, some loss of grip strength in the right hand but intact muscle bulk with no evidence of atrophy, and normal range of motion in all joints and extremities save the right elbow.  X-rays have shown no abnormality in the knee and only mild deformity of the tibia from a remote healed fracture.  A MRI showed only mild degenerative changes in the lumbar spine.  (ex. 1F-52F)

-17-

> Claimant has complained of mental and emotional
> impairments.  However, mental status examinations have
> observed normal thought processes, intact verbal
> abstractions, intact memory and concentration, and no
> evidence of hallucinations or delusions.  Instead,
> claimant's problems appear to be situational in nature,
> largely the result of a failed marriage and inability
> to obtain high-level employment consistent with the
> well-paid, skilled work he performed in the past.  (ex.
> 19F/28).

(R. 524-25).  She explained the weight given medical opinions:

> As for the opinion evidence, the undersigned has
> considered attorney-generated reports from claimant's
> treating psychologists, Dr. Shawna Wright PhD., and Dr.
> Melvin Berg PhD. (ex. 51F, 12F) However, the
> undersigned cannot give great weight to these reports
> in light of evidence described above documenting
> claimant's exaggeration of his symptoms and
> limitations, his good level of daily activity, and the
> mental status evaluations which indicate describe [sic]
> adequate concentration and memory.

(R. 525).  Beyond the three paragraphs quoted above and the

summary of Dr. Schrag's opinion, there is no other mention in the

decision of medical evidence or medical source opinions.

Once again, the ALJ's summary, consideration, and discussion

of the medical evidence and the opinions of medical sources has

been abbreviated to the point of absurdity.  As quoted above, the

ALJ purported to summarize the medical signs and findings in one

paragraph with but a single citation to all fifty-two exhibits

constituting 751 pages in the medical records.  This extreme

summarization and condensation places the ALJ's decision beyond

meaningful judicial review.  In order to affirm such an analysis,

the court would have to perform a <u>de novo</u> review and determine

whether there is any reasonable view of the evidence which could support the ALJ's determination.  However, the court's task is to review the <u>Commissioner's</u> decision, not to seek out and illuminate a rationale not relied upon or even mentioned by the ALJ, which would justify that decision.

As plaintiff argues, the ALJ stated that she could not give "great weight" to the opinions of Drs. Wright and Berg, but she did not explain of what lesser weight she found them worthy. Moreover, both psychologists are treating sources and the ALJ did not specifically consider whether their opinions should be given controlling weight, and if not, of what lesser weight they are worthy.  Further, not all of the ALJ's stated reasons for discounting the psychologists' opinions are supported by substantial evidence in the record as a whole.

The ALJ discounted the psychologists' opinions in part because Dr. Schrag[5] documented claimant's exaggeration of his symptoms and limitations.  (R. 525).  However, the ALJ appears to have unquestioningly accepted Dr. Schrag's opinion without considering that Dr. Schrag is an examining source who performed an independent medical evaluation, and without specifically weighing Dr. Schrag's report or explaining why it outweighs the treating sources' opinions.  That itself is error.  <u>Goatcher</u>, 52

---

[5]Again, the ALJ referred to this doctor as Dr. Bharati, M.D., but the record reveals that the reports were signed by Dr. Schrag, Ph.D., and the court will use the correct nomenclature.

F.3d at 289-90(citing <u>Reyes v. Bowen</u>, 845 F.2d 242, 245 (10th Cir. 1988)).

The ALJ also purported to discount the psychologists' opinions because "the mental status evaluations . . . describe adequate concentration and memory." (R. 525). However, the decision provides no citation or discussion of any mental status evaluation other than Dr. Schrag's independent medical evaluation, and the ALJ does not point out (nor does the court find) an opinion in Dr. Schrag's evaluation stating that plaintiff's concentration and memory are "adequate." (R. 524). As discussed above, the court will not seek out other mental status evaluations, weigh those evaluations in the first instance, and construct a justification for the ALJ's decision.

Additionally, the ALJ cited to a single treatment note from Dr. Berg, dated July 25, 2007, and stated that, "mental status examinations have observed normal thought processes, intact verbal abstractions, intact memory and concentration, and no evidence of hallucinations or delusions. Instead, claimant's problems appear to be situational in nature, largely the result of a failed marriage and inability to obtain high-level employment consistent with the well-paid, skilled work he performed in the past." (R. 525)(citing Ex. 19F/28(R. 325)). However, the court's review of the record cited reveals nothing regarding a mental status examination or any of the other factors

-20-

discussed.  Rather, the court notes discussion of irrational
thinking, irrational thoughts, and depression resulting from
chronic pain.  (R. 325).  The note states, "PT is trying hard to
control irrational ideas about his physical condition," and
indicates a plan to continue therapy once weekly.  (R. 325).
Simply put, the ALJ points to nothing in the evidence to support
her determination to discount the psychologists' opinions.

As plaintiff points out, the ALJ made no mention whatever
regarding the opinions of plaintiff's treating nurse-
practitioner, Dr. Hayes, or regarding the opinion of Dr. Curtis,
despite the court's specific notice that the earlier decision was
erroneous in part because it did not discuss the opinion of Dr.
Curtis.  (Pl. Br. 35-36)(citing (R. 560)).  The Commissioner
argues that Dr. Hayes is not an "acceptable medical source," that
"there are a plurality of other medical assessments in the record
endorsing various levels of work-related limitations," and
therefore, it was proper for the ALJ to assign controlling weight
to the opinion of Dr. Carabetta, an acceptable medical source.
(Comm'r Br. 8-10).

Again, the Commissioner's argument illustrates the error in
the decision at issue.  As the Commissioner suggests, there are
numerous medical sources who examined the record or examined or
treated plaintiff and expressed various opinions regarding
plaintiff's diagnoses and prognosis, abilities, limitations, and

restrictions.  (R. 160-425, 436-63, 721-1177)(including Dr.
Glenn, Dr. Melhorn, Dr. Eyster, Dr. Carabetta, Dr. Thomas, Dr.
Bruner, Dr. Kim, Dr. Berg, Dr. Voorhees, Dr. Schrag, Dr. Blakely,
Dr. Curtis, Dr. Hayes, Dr. Weng, Dr. Wright, Dr. Sankoorikal, Dr.
Ralston, Dr. Mintz, Dr. Hausheer, and others).  Yet, as plaintiff
argues, the ALJ mentioned only three medical sources by name, and
specifically assessed the opinions of only two.

It is error to ignore any medical source opinion.  Victory
v. Barnhart, 121 Fed. App'x 819, 825 (10th Cir. Feb. 4, 2005);
SSR 96-5p, West's Soc. Sec. Reporting Serv., Rulings 123-24
(Supp. 2008).  Furthermore, in the prior remand order the
district court noted that on remand the Commissioner must
"determine and explain what weight, if any, she gives the
opinions of other medical practitioners." (R. 561).  It is
apparent on this record that the Commissioner must evaluate and
assess the weight to be given to the medical source opinions in
the record.  That evaluation is not dependent upon the court's
identification of a particular opinion which must be assessed.
It is not dependent upon plaintiff's argument that a particular
opinion must be assessed.  Rather, it is part of the
Commissioner's duty in every case.  20 C.F.R. §§ 404.1527,
416.927; SSR 96-5p; Robinson, 366 F.3d at 1083-84.  Here, in two
decisions, neither ALJ has assessed the opinions of the medical
sources and explained the relative weight assigned to each.

Remand is necessary for the Commissioner to do so.   On remand, unless controlling weight is assigned to the opinion of one or more treating source, the opinion of each medical source must be assessed in accordance with the regulatory factors.   If treating source opinions are not given controlling weight, the opinions of nurse-practitioner Dr. Hayes must also be assessed in accordance with SSR 06-3p and the regulatory factors.

The court is painfully aware of the length of the record in this case, and of the difficulty involved in assessing each medical record and the opinions of all medical care providers. However, the regulations and rulings specify the procedure to be followed in evaluating such opinions, the Tenth Circuit has explained the controlling law, and the court cannot affirm a decision where the plaintiff points out error in the Commissioner's evaluation of the medical source opinions.   The court does not intend to imply that the Commissioner must discuss every medical record and every opinion in the decision.   However, he must discuss the evidence supporting his decision, the uncontroverted evidence he chooses not to rely upon, and significantly probative evidence he rejects.   Clifton v. Chater, 79 F.3d 1007, 1009-1010 (10th Cir. 1996).   Applying this standard, where the Commissioner does not give a treating source opinion controlling weight he must discuss the opinions

-23-

(header left blank)

supporting his decision, the uncontroverted opinions he chooses
not to rely upon, and the opinions he rejects.

Finally, the court disagrees with the Commissioner's
suggestion that the ALJ properly assigned controlling weight to
Dr. Carabetta's opinion.  First, there is no indication in the
decision that the ALJ assigned controlling weight to Dr.
Carabetta's opinion.  The ALJ did not address Dr. Carabetta by
name, and did not cite to any of the multiple exhibits containing
Dr. Carabetta's opinion.  The Commissioner's argument that the
ALJ gave Dr. Carabetta's opinion controlling weight is merely
another example of post-hoc rationalization which, as discussed
above, the court may not apply.  Knipe v. Heckler, 755 F.2d 141,
149 n.16 (10th Cir. 1985)(court may not affirm on basis of
appellate counsel's post-hoc rationalization).

Additionally, controlling weight may only be accorded to the
opinion of a treating source, 20 C.F.R. §§ 404.1527(d)(2),
416.927(d)(2), the ALJ did not make a finding that Dr. Carabetta
is a treating source, and it is by no means clear that he is.
The first time Dr. Carabetta evaluated plaintiff, on July 26,
2000 was for the purpose of an "Independent Medical Evaluation
Report."  (R. 216-20).  Thereafter Dr. Carabetta continued to
provide evaluations and opinions through at least May 5, 2003.
(R. 857).  On remand, the Commissioner must determine whether Dr.
Carabetta is a treating source.  20 C.F.R. §§ 404.1502, 416.902(a

medical source who has provided medical treatment or evaluation "with a frequency consistent with accepted medical practice for the type of treatment and/or evaluation required for your medical condition(s)").

## IV.  Remaining Allegations of Error

Plaintiff also claims the ALJ erred in her credibility determination and in assessing plaintiff's RFC.  However, the court's review of the credibility evaluation is deferential to the ALJ as the trier-of-fact, and both the credibility determination and the RFC assessment will likely change after a proper step two and step three evaluation and a proper evaluation of the opinions of the medical sources.  Therefore, it would be premature at this time to attempt to guide the credibility determination and the RFC assessment on remand.  Plaintiff may make his arguments in this regard to the Commissioner on remand.

## V.  Remand for Immediate Award of Benefits

In his final argument, plaintiff asserts that the proper remedy in this case is remand for an immediate award of benefits because of delays in deciding the case and because of the fact that errors in the first decision were repeated in the second decision.  The Commissioner asserts that remand for further administrative proceedings is the appropriate remedy.

Whether to remand the case for additional fact-finding or for an immediate award of benefits is within the discretion of

-25-

the district court.  Ragland v. Shalala, 992 F.2d 1056, 1060
(10th Cir. 1993); Taylor v. Callahan, 969 F. Supp. 664, 673 (D.
Kan. 1997) (citing Dixon v. Heckler, 811 F.2d 506, 511 (10th Cir.
1987)).  In 2006, the Tenth Circuit noted two factors relevant to
whether to remand for an immediate award of benefits:  Length of
time the matter has been pending and "whether or not 'given the
available evidence, remand for additional fact-finding would
serve [any] useful purpose but would merely delay the receipt of
benefits." Salazar v. Barnhart, 468 F.3d 615, 626 (10th Cir.
2006)(quoting Harris v. Sec'y of Health & Human Servs., 821 F.2d
541, 545 (10th Cir. 1997); and citing Sisco v. Dep't of Health &
Human Servs., 10 F.3d 739, 746 (10th Cir. 1993)).

        The decision to direct an award of benefits should be made
only when the administrative record has been fully developed and
when substantial and uncontradicted evidence on the record as a
whole indicates that the claimant is disabled and entitled to
benefits.  Gilliland v. Heckler, 786 F.2d 178, 184, 185 (3rd Cir.
1986).  However, the Commissioner is not entitled to adjudicate a
case ad infinitum until she correctly applies the proper legal
standard and gathers evidence to support her conclusion.  Sisco,
10 F.3d at 746.

        Here, the first factor weighs in favor of remand for an
immediate award of benefits.  The applications at issue here have
been pending since Dec. 1, 2000, and this is the second time

-26-

plaintiff has sought judicial review of the Commissioner's decision regarding disability.  Nevertheless, the record evidence is not uncontradicted.  As plaintiff argues, there is evidence from which one might conclude that he is disabled within the meaning of the Act.  As the Commissioner argues, there is also evidence from which one might conclude that plaintiff is not disabled.  Central to a determination in this case is a proper evaluation of the medical evidence and of the opinions of the medical sources, including Dr. Hayes.  Yet, despite nearly eight years under adjudication and two hearing decisions, no one has properly evaluated that evidence.  And, the court may not weigh conflicting evidence in place of the Commissioner.

Out of an abundance of caution, because the evidence is equivocal, and because there is no indication in the record that the Commissioner or the ALJs have been unwilling or unable to properly evaluate this case, the court recommends remand for the Commissioner to properly evaluate steps two and three of the sequential evaluation process and to properly evaluate and explain the weight accorded to the opinions of the medical sources, including Dr. Hayes.  The court would caution the Commissioner, however, that its patience is not without limit.

**IT IS THEREFORE RECOMMENDED** that the Commissioner's decision be REVERSED and that judgment be entered pursuant to 42 U.S.C. § 405(g) REMANDING the case for further proceedings.

-27-

Copies of this recommendation and report shall be delivered to counsel of record for the parties.  Pursuant to 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b), and D. Kan. Rule 72.1.4, the parties may serve and file written objections to this recommendation within ten days after being served with a copy. Failure to timely file objections with the court will be deemed a waiver of appellate review.  <u>Morales-Fernandez v. INS</u>, 418 F.3d 1116, 1119 (10th Cir. 2005).

Dated this 16th day of October 2008, at Wichita, Kansas.

s/John Thomas Reid
**JOHN THOMAS REID**
**United States Magistrate Judge**